**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

| | | |
|---|---|---|
| In re: | * | Case No. 14-29084-DER |
| | * | Chapter 7 |
| ARTHUR D. EVEREST, | * | |
| | * | |
| Debtor. | * | ***AMICUS CURIAE* BRIEF** |
| | * | ON BEHALF OF THE |
| | * | CONSUMER BANKRUPTCY SECTION |
| | * | OF THE MARYLAND STATE BAR |
| | * | ASSOCIATION |
| *   *   *   *   *   *   * | | |

<u>**MEMORANDUM BRIEF OF *AMICUS CURIAE***</u>

NOW COMES, the Consumer Bankruptcy Section of the Maryland State Bar Association, by Michael A. Ostroff, Esq., Chair, and submits this Brief, and states:

By Order dated June 26, 2015, this Court *sua sponte* granted leave for the Consumer Bankruptcy Section of the Maryland State Bar Association ("Section") to submit a memorandum as *amicus curiae* as to the impact of *Harris v. Viegelahn*,  575 U.S. ___, 135 S.Ct. 782 (2015) on payment of attorneys' fees by Chapter 13 trustees.

<u>**Introduction**</u>

On May 18, 2015, the U.S. Supreme Court issued an opinion *Harris v. Viegelahn* that decided a circuit split on the issue of what happens post-conversion to wages held by a Chapter 13 Trustee. 575 U.S. ___, 135 S.Ct. 782 (2015).  In *Harris*, the Supreme Court ruled that funds held by a Chapter 13 Trustee may not be disbursed post-conversion to creditors but instead must be refunded to the now-Chapter 7 debtor. *Id.*

The *Harris* decision has opened the door to an issue previously resolved in this District: specifically, the principle that, to the extent a Chapter 13 trustee was holding funds, debtors' counsel would be compensated (at least in part) from distribution by the Chapter 13 trustee to the

1

extent funds are on hand, regardless of the ultimate procedural outcome. Prior to the *Harris* decision, counsel could anticipate payment in accordance with either the terms of the confirmed plan or pursuant to an Order after a motion to direct payment was filed. Now, however, it is unclear to both Chapter 13 trustees and debtors' counsel whether, and by what mechanism, a Chapter 13 Trustee should disburse funds to counsel post-conversion or post-dismissal.

Though the present case has its own factual and procedural posture, the issue of whether *Harris*'s holding applies may arise in four (4) generic scenarios: 1) conversion pre-confirmation (the situation presented in the case *sub judice*); 2) conversation post-confirmation (the situation in *Harris v. Viegelahn*); 3) dismissal pre-confirmation; and 4) dismissal post-confirmation. For the reasons set out more fully below, the Section believes that the narrow holding of *Harris v. Viegelahn* is inapplicable to the question of paying attorneys' fees and expenses. Accordingly, the Section urges this Honorable Court to limit the application of *Harris* to facts at hand and direct payment of counsel's fees and expense reimbursement as appropriate.

## Argument

### I.     Factual Limitations and Narrow Question Presented

Despite a desire by some to find the holding to be a final and universal declaration regarding Chapter 13 trustee distributions in a failed Chapter 13 case, *Harris* is both factually and legally quite narrow. In *Harris*, the Chapter 13 trustee made three disbursements pursuant to a confirmed plan but post-conversion: she "disposed of those funds by giving $1,200 to Harris' counsel, paying herself a $267.79 fee, and distributing the remaining money to [one secured creditor] and six of Harris' unsecured creditors." Slip Op. at 5. In other words, the disbursement fell into three categories: attorneys' fees, trustee commission, and disbursements to creditors. Despite the three types of disbursements, the question posed, and answered, by the Supreme

Court was limited: "[M]ay the trustee distribute the accumulated wage payments to **creditors** as the Chapter 13 plan required, or must she remit them to the debtor?" Slip Op. at 2 (emphasis added).

The narrowness of the question was no mistake: Charles Harris had not asked for, nor did he move to recover, the attorney's fees or trustee commission disbursed post-conversion. *See* In re Charles E. Harris, III, Case No. 10-50655, Doc. 38. (Bankr. W.D. Tex. 2010). At the time of conversion, the Chapter 13 trustee held $5,519.22 in undisbursed funds. *In re Harris*, 491 B.R. 866, 868 (W.D. Tex. 2013). The day after conversion, and in response to an email request from debtor's counsel, the Chapter 13 trustee disbursed $1,200 to counsel for attorneys' fees. *Id.* Over a month after the conversion, debtor filed a motion to compel refund of the post-conversion, post-attorney fee balance. *Id.* Specifically, the motion requested a refund of $4,319.22, the balance remaining *after* disbursement of the attorney's fees. In re Charles E. Harris, III, at Doc. 38. Accordingly, despite ruling in favor of the debtor, the bankruptcy court only directed that "the Chapter 13 Trustee, Mary K. Viegelahn, shall pay $4,319.22[.]"In re Charles E. Harris, III, at Doc. 45.

The Fifth Circuit's opinion demonstrates further why the attorney's fee disbursement was not at issue: "Attached to Harris' notice of conversion was an assignment of funds assigning $1,200 of the remaining funds to Harris' counsel in payment for legal fees." *In re Harris*, 757 F. 3d 468, 471 (2014). As such, no court in the *Harris* chain addressed the issue of attorneys' fees; instead, all focused on the limited issue of the Chapter 13 Trustee's authority to disburse post-conversion funds to creditors. [1]

---

[1] As *Harris* did not address the validity of the assignments in the Chapter 13 context, nor does it appear that counsel in the case *sub judice* asserted any assignment, the Section does not intend to address this issue in detail herein. That said, the Section notes that a valid assignment under applicable non-bankruptcy law would be an independent

Accordingly, *Harris v. Viegelahn* is inapposite to the attorney fee issues now percolating through our district.

## II.  Payment of Attorneys' Fees and Expenses Appropriate under Bankruptcy Code

Despite the holding not being applicable, some argue that the legal reasoning underpinning *Harris* nevertheless dictates that a Chapter 13 trustee has only one option upon conversion or dismissal: to refund the full balance to the debtor.  Inherent in the argument that the Chapter 13 trustee is required to refund any unpaid funds to debtor upon conversion or dismissal is the assumption that the Bankruptcy Court loses jurisdiction over the debtor and the Chapter 13 estate, and that the Chapter 13 trustee simply ceases to exist.  However, the statutory scheme of the U.S. Bankruptcy Code demonstrates that certain matters, including resolution and payment of attorneys' fees and expenses, remain within the jurisdiction of the Bankruptcy Court and are subject to payment by the Chapter 13 trustee regardless of case posture.

Upon the filing of a petition for relief under Chapter 13, the debtor is to "commence making payments . . . in the amount . . . proposed by the plan to the trustee[.] 11 U.S.C. § 1326(a)(1).  Assuming the debtor in fact makes a payment prior to the case being converted or dismissed,

> . . . payments[s] made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, *after deducting any unpaid claim allowed under section 503(b).*

---

basis for granting a motion to direct payment to debtor's counsel. *See, e.g., Hernandez v. Suburban Hospital,* 319 Md. 226, 572 A.2d 144 (1990) (holding that, under Maryland law, a valid assignment transfers all right, title and interest in the assigned funds to the assignee and that, once placed on notice of the existence of the assignment, the holder of those funds becomes personally liable should those funds be paid to the assignor, instead of the assignee).

11 U.S.C. § 1326(a)(2) (emphasis added).  Section 503(b)(2) provides for the payment of administrative expenses including "compensation and reimbursement awarded under section 330(a) of this title[,]" which in turn provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).

Taken together §§ 330(a), 503(b) and 1326(a), attorney's fees earned post-petition (whether pre- or post-confirmation) constitute an administrative claim, which is to be paid by the Chapter 13 trustee from funds held before any balance is returned to the debtor.  An attorney's claim is not of the same class as that of general creditor, which *is* subject to *Harris*.  To understand the distinction, one can look to § 101(10) for the definition of a creditor as an:

(A)  entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B)  entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h), or 502(i) of this title; or

(C)  entity that has a community claim.

The word "claim" is further defined in § 101(5)(a) as a "right to payment, whether or not such a right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."

As such, debtor's counsel clearly has a claim under the Bankruptcy Code but one that is distinguishable: it is a claim under § 503(b), and explicitly directed to be paid by § 1326(a)(2).  Therefore, counsel is requesting payment of a claim as an administrative expense and the Chapter 13 trustee is obligated to pay any allowed administrative claim, including reasonable attorneys' fees and expenses, prior to returning any funds to the debtor.  Courts have long-held

this obligation to be unambiguous. *See In re Inyamah*, 378 B.R. 183 (Bankr. S.D. Ohio 2007); *In re Bailey*, 320 B.R. 775 (Bankr. D. Ore 2005); *In re Oliver*, 222 B.R. 272 (Bankr. E.D. Va. 1998).

While the language in § 1326(a)(2) is not a model of precision, it is clear that Congress intended for certain administrative claims to be paid by the Chapter 13 trustee, despite a potential for dismissal or conversion. Where there is a confirmed plan, "the trustee shall distribute any such payment in accordance with the plan *as soon as is practicable*." 11 U.S.C. § 1326(a)(2). Payment of administrative claims should be paid "[b]efore or at the time of each payment to creditors under the plan[.]" 11 U.S.C. § 1326(b)(1). In other words, the post-confirmation clause presumes the trustee is already disbursing on any allowed administrative claim under § 503(b), in accordance with the confirmed plan, and therefore does not explicitly restate that obligation. The third sentence of § 1326(a)(2) makes it clear that the trustee should satisfy administrative claims before remitting a refund to the debtor. Where the "plan is not confirmed[,]" administrative claims under § 503(b) are explicitly to be paid before a refund is issued to the debtor. 11 U.S.C. § 1326(a)(2). There is no indication that Congress intended to make pre-confirmation administrative claims payable in full but to then bar disbursement on those same claims *after* a debtor successfully confirms a plan. Accordingly, the Section avers that administrative claims under 503(b) are to be paid, regardless of whether the Chapter 13 itself terminates pre- or post-confirmation, before the debtor would be entitled to any refund.

Furthermore, the payment of counsel's claim pursuant to §§ 1326(a)(2), 503(b)(2), and 330(a)(4)(B) of the Bankruptcy Code is not altered by the conversion under 11 U.S.C. § 348 or dismissal of the Chapter 13 case under 11 U.S.C § 349. While the phrase "plan is not confirmed" is not defined by the Code, the Section avers that a proper reading includes any of

6

the following scenarios: the plan in denied without leave to amend, the case is dismissed or the case is converted.[2]  In fact, § 1326(a)(2)'s mandate of payment would be superfluous if it did not survive conversion and dismissal: in what other scenario would the trustee be holding undisbursed funds subject to allowed administrative claims not yet disbursed?  Reading either § 348 or § 349 to negate the mandate of § 1326(a)(2) to pay administrative claims would render meaningless every word after "[a] payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation."   Either the plan would control disbursements, or the trustee would not be entitled to disburse *any* amount.[3]  This is clearly not what Congress intended: Congress meant to have administrative claims satisfied prior to any refund to the debtor.

Some have attempted to further distinguish the outcome based on whether the case was converted or dismissed.  For instance, some rely on § 348(e), which states that "[c]onversion . . . terminates the service of any trustee . . . serving in the case before conversion." 11 U.S.C § 348(e). *See Harris*, 575 U.S. at slip op., p. 8.  However, reliance on this provision once again ignores the factual and legal distinctions between administrative claims under § 503(b) and creditor's claims to be paid under a confirmed plan.  As the Supreme Court noted, "Harris having converted the case, the Chapter 13 *plan* was no longer binding." *Id.* at 9 (emphasis added; internal quotations and formatting omitted).  As such, the Court refused to recognize the

---

[2] It would be illogical for "not confirmed" to include a denial with leave to amend a plan, as the trustee would then be required to refund payments already made, with the debtor simply reissuing payments in order to proceed to confirmation under any future amended plan.  Nothing in the statutory scheme suggests that was the intended outcome; in fact, it would undermine the § 1326(a)(1) command that payments commence within 30 days.  As such, Chapter 13 trustees retain payments without disbursing until either confirmation, or until a final determination that no plan will be confirmable (i.e., denial without leave, conversion or dismissal).

[3] One could envision an argument that the third sentence of §1326(a)(2) is applicable only during the time period between an order denying confirmation without leave to amend being entered and the subsequent conversion or dismissal of the case.  However, this argument strains logic and reality: Why would Congress enact a requirement that the trustee make disbursement on § 503(b) claims but *only within* the arbitrary fourteen day period (or less) between a denial without leave and the subsequent conversion or dismissal?

distribution of funds to creditors as part of the obligation to "wind up" the affairs of the estate. *Id.*

In support of its holding limiting the Chapter 13 trustee's post-confirmation "wind up" services, the Supreme Court referenced Federal Rule of Bankruptcy Procedure 1019's mandate that Chapter 13 trustees turn over records and assets to the Chapter 7 trustee, and file a report with the U.S. trustee. *Id.*  In doing so, the Supreme Court recognized by implication that the Chapter 13 trustee was not charged (in a rule nonetheless) with further distributions under a plan to creditors.  But the implication-by-silence used to support the position that a Chapter 13 trustee's "service" terminates upon conversion does not apply to § 503(b) claims.  In fact, Rule 1019(6) specifically addresses the treatment of post-petition, pre-conversion administrative expenses and recognizes the statutory distinction between § 503(b) claims and other types of claims.  Rule 1019(6) is, in substance, the implementing provision that addresses the procedure and treatment of claims arising under § 348(d).  Since § 348(d) itself does not apply to "a claim specified in section 503(b) of this title[,]" it cannot be used to deny that the statutory duty of the Chapter 13 trustee is to pay administrative claims pursuant to §1326(a)(2).  Instead, § 348(d), as implemented by Rule 1019(6), allows for the timely filing and treatment of certain claims within the context of the Chapter 7 administration; but neither the statutory provision or rule of procedure overrule the otherwise valid treatment of § 503(b) claims  pursuant to § 1326(a)(2) (i.e., payment from funds held by the Chapter 13 trustee).  While the Chapter 13 plan is no longer binding post-conversion or post-dismissal and, therefore, the Chapter 13 trustee no longer has authority to disburse pursuant to that now-mooted plan, nothing in § 348 or § 349 negates the statutory authority and responsibilities of the Chapter 13 Trustee to pay on administrative claims pursuant to 11 U.S.C. § 1326(a)(2).

As the Bankruptcy Code explicitly mandates the payment of administrative claims arising under 11 U.S.C. § 503(b), this Honorable Court should continue to authorize Chapter 13 trustees, as otherwise appropriate, to make payments on administrative claims for attorneys' fees and expenses reimbursements, regardless of the procedural posture of the case.

## III.   Public Policy Supports Payments of Attorneys' Fees

The Section is aware that this Honorable Court will not decide this issue based solely on public policy considerations.  However, when viewed in the context of the statutory scheme discussed above, public policy concerns shed light on why Congress distinguished the treatment of administrative claims from all other creditor claims and, through § 1326(a)(2), explicitly authorized payment of § 503(b) claims before a debtor was entitled to any refund.

As the *Harris* decision recognized, only about one in three cases filed under Chapter 13 ends in discharge. Slip Op. at 3 (*citing* Katherine Porter, *The Pretend Solution: An Empirical Study of Bankruptcy Outcomes*, 90 Texas L.Rev 103 (2011)).  Professor Porter noted that "the creation of Chapter 13 was seen as a cornerstone of the improved system of legal relief for consumers" when the Bankruptcy Code of 1978 was enacted. Porter, *supra*, at 105.  As Professor Porter states, Chapter 13 filings increased dramatically during the first years under the 1978 Code from about 15% of all consumer filings in 1978 to almost 30% by 1982.  "For the last two decades approximately one-third of all consumer filings have been in Chapter 13." *Id.* at 107.  In addition to being a repayment plan for high income debtors, Chapter 13 allows debtors to cure arrears on secured debts and reorganize their financial portfolio.  "Today, Chapter 13 is considered a bedrock of consumer bankruptcy, esteemed by many for its nuanced approach to debt relief." *Id*. at 110-11. "Nuance" may be an understatement considering that, prior BAPCPA's enactment, the National Bankruptcy Review Commission stated, "(N)o area of

9

bankruptcy law is more complex than consumer bankruptcy." *See Bankruptcy: The Next Twenty Years* (1993), *available at* <http://govinfo.library.unt.edu/nbrc/report/05acons.pdf>.

Chapter 13 bankruptcies are complicated and, accordingly, attorney's fees are much higher in a Chapter 13 case as compared to a Chapter 7 case. Most, if not all, potential Chapter 13 debtors have experienced a financial crisis in their lives prior to seeking legal consultation. Often times, as a result of job loss, medical emergency, or divorce, the potential Chapter 13 debtor does not have excess funds and is not in a position to pay a large upfront retainer for legal representation. Accordingly, the practice is to require a portion of the anticipated fees be paid prior to filing with the balance to be paid through the plan. That said, a tension remains even when Chapter 13 debtors intend to satisfy attorneys' fees through the bankruptcy plan. According to a study sponsored by the American Bankruptcy Institute and the National Conference of Bankruptcy Judges:

> Most debtors have complied and will continue to comply with the new BAPCPA conditions with the aid of an attorney. Such compliance, however, has not been without cost. These procedural requirements have taken their toll on debtors, attorneys, trustees and judges and have had a direct and quantifiable effect on how the bankruptcy system operates, and how bankruptcy is practiced. Attorney fees in consumer bankruptcy cases are subject to a relatively high level of statutory, administrative, and judicial scrutiny. Because they are typically the largest expense associated with a consumer debtor's bankruptcy case, there is considerable tension between the potentially competing goals of keeping bankruptcy affordable for those who need it, and ensuring a highly competent, professional, and sustainable consumer bankruptcy bar.

See Lois R. Lupica, *The Consumer Bankruptcy Fee Study* (2011), at p. 13.

Our Bench and bar are cognizant of this tension and, as a partial response, the Bench adopted Appendix F to the Local Rules, which provided for a "no look" fee in a Chapter 13

bankruptcy of up to $4,500.00.[4]  Appendix F demonstrates the policy of this Bench to encourage qualified representation of Chapter 13 debtors by highly competent and professional practitioners.  Consequently, consumer attorneys are willing to represent Chapter 13 debtors for a modest, upfront fee knowing that there is an opportunity to be paid the balance of the fee through the plan.  This practice allows the attorney to represent "honest but unfortunate debtors" who are looking for a chance to reorganize their financial lives without placing an often-times impossible financial burden of requiring full upfront fees.

If debtor's counsel can no longer anticipate payment from the funds held by a Chapter 13 trustee unless the plan is confirmed *and* funding is high enough to immediately satisfy fees, there will be a chilling effect on the willingness of the consumer bar to represent Chapter 13 debtors for relatively small, upfront fees.  Counsel would be required to evaluate the debtors' likelihood for success even before giving the debtor the opportunity to file a petition for relief under Chapter 13.  It is reasonable to assume that debtor's counsel in general will require higher upfront fees, which itself may leave many prospective debtors priced out of the bankruptcy market and denied access to competent counsel.

The result will be an exponential increase in the number of *pro se* Chapter 13 debtors, with all the baggage that *pro se* filings bring to the Bankruptcy Court, the Clerk and creditors.  As noted above, Professor Porter declared that only one out of every three cases filed under Chapter 13 ends in a completed plan and subsequent discharge.  Professor Lupica goes even further when she states:

> [W]e found that during the pre-BAPCPA period 40% of Chapter 13 *pro se* cases were filed with the aid of a petition preparer.  Post-BAPCPA, 100% of *pro se* cases were filed under Chapter 13 with a petition preparer's assistance.  **Not one**

---

[4] It is beyond the scope of this brief to provide a full discussion of Appendix F, its history and the policy considerations.  That said, as a factual matter, Appendix F has provided substantial guidance to the Bench, bar and debtors as to the issue of attorneys' fees and, in particular, how fee balances will be satisfied.

> of the post-BAPCPA cases filed with the assistance of a petition preparer
> ended in the debtor receiving a discharge.

*Supra*, at 64 (emphasis added).   Without a mechanism for assuring debtor's counsel that there is an opportunity to be paid even when a debtor cannot confirm a plan, or confirms a plan in a case that is later dismissed or converted, the quality and success of Chapter 13 cases in general is sure to suffer.

Recognizing these concerns in the Chapter 13 context, Congress carved out an exception from the general rule that the Chapter 13 trustee should refund monies to the debtor at conversion or dismissal: the "trustee shall return any such payments [only] *after deducting any unpaid claim allowed under section 503(b)*." 11 U.S.C. § 1326(a)(2).  Congress anticipated that certain claims for fees and expenses would not be satisfied in full in the event that a case proceeding under Chapter 13 terminated prematurely.  These include compensation for debtor's counsel in a Chapter 13 case. *See* 11 U.S.C. § 330(a)(4)(B).  As the Bankruptcy Code itself recognizes the importance of allowing reasonable compensation to debtor's counsel, the Section urges this Honorable Court to continue to recognize the importance of paying attorneys' fees as an administrative expense and, therefore, authorizing payment pursuant to § 1326(a)(2) from the funds held by the Chapter 13 trustee even after conversion or dismissal.

Accordingly, the Consumer Bankruptcy Section of the Maryland State Bar Association respectfully urge this Honorable Court to recognize the factual and legal limitations of *Harris v. Viegelahn*,  575 U.S. ___, 135 S.Ct. 782 (2015) as to the issue of attorneys' fees and expenses; and proceed to consider and, to the extent appropriate, grant counsel's request for direct payment as an administrative claim.

**Date: August 7, 2014**                   Respectfully submitted on behalf of the

                                           **Consumer Bankruptcy Section of the
                                           Maryland State Bar Association**

                                           By:

                                           */s/ Michael A. Ostroff*
                                           Michael A. Ostroff, Esq. #17803
                                           1738 Elton Road, Suite 105
                                           Silver Spring, Maryland 20903
                                           Tel: 301- 588-8100; Fax: 301-588-8101
                                           *Chair, Consumer Bankruptcy Section of the
                                               Maryland State Bar Association*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2015, a copy of the foregoing was served via ECF to those parties registered to receive electronic notices in this case.

                                           */s/ Michael A. Ostroff*
                                           Michael A. Ostroff, Esq.


13